ACHTENBERG v EAST LANSING

Docket No. 70475. Submitted December 7, 1983, at Lansing.—Decided
April 18, 1984. Leave to appeal granted, 419 Mich —.

Richard J. Achtenberg, a firefighter employed by the City of East
Lansing for 23 years, worked a full 24-hour shift on February
27-28, 1976. The following morning he suffered a fatal heart
attack while home in bed. Charlene Achtenberg, Richard's
widow, filed a workers' compensation claim on behalf of herself
and her three minor children, alleging that the death of her
husband was due to his employment as a firefighter. Mrs.
Achtenberg had been notified earlier of her eligibility to receive
pension benefits from the Municipal Employees Retirement
System. She applied for and began receiving nonduty pension
benefits after being told that because duty death benefits, which
are preferable to nonduty death benefits, would be offset by any
workers' compensation benefits for which she might qualify,
her application for duty death benefits could not be processed
until her workers' compensation claim was completed. The
Bureau of Workers' Disability Compensation denied Mrs.
Achtenberg's claim for benefits on the ground that she failed to
prove that her husband's death was causally related to his
employment. The Workers' Compensation Appeal Board af-
firmed. Mrs. Achtenberg filed an application for leave to appeal
to the Court of Appeals. Leave was denied. Mrs. Achtenberg
then sought leave to appeal to the Supreme Court, which, in
lieu of granting leave to appeal, issued an order remanding the
case to the Court of Appeals for consideration as on leave
granted, 417 Mich 936 (1983). Mrs. Achtenberg claims that the
WCAB erred in failing to apply the work-related disability
presumption contained in the provision of the Worker's Disabil-

REFERENCES FOR POINTS IN HEADNOTES
[1] 60 Am Jur 2d, Pensions and Retirement Funds §§ 52, 53.
82 Am Jur 2d, Workmen's Compensation §§ 296, 298, 300.
Relationship between fireman's or policeman's performance of offi-
cial duties and his death, for purposes of recovery of benefits by
survivors. 27 ALR2d 1004.
[2] 73 Am Jur 2d, Statutes §§ 145, 207, 208.

ity Compensation Act which deals with respiratory and heart diseases of firemen. The WCAB refused to apply that presumption because Mrs. Achtenberg had applied for and received pension benefits from her husband's employer. The issue on appeal is whether the phrase "any pension benefits" as used in the section of the act dealing with respiratory and heart diseases of firemen was intended to include dissimilar benefits for the same injury, such as the nonduty pension benefits received by Mrs. Achtenberg. *Held:*

A literal reading of the section at issue leads to the conclusion that a workers' compensation claimant who is the recipient of *any* pension benefits is not entitled to the presumption of work relationship provided in the act. The presumption of work relationship applies only to those who have been denied pension benefits by their employing unit. Therefore, although Mr. Achtenberg probably came squarely within the class of persons intended to be benefited by the statute and he ought logically to have been afforded the presumption if he qualified for less than a full measure of pension benefits, the Court of Appeals must read and apply the statute as the Legislature wrote it.

Affirmed.

CYNAR, J., dissented. He would reverse on the ground that the function of the Court of Appeals in this case is to interpret the Legislature's work product and to do so in such a fashion as to effectuate the legislative intent and that statutory language need not, and should not, be read with wooden literalness if to do so would create an absurdity or a result contrary to the obvious intent of its authors.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — FIREMEN — POLICEMEN — PENSION BENEFITS — RESPIRATORY AND HEART DISEASES.

A workers' compensation claimant who is a member of a full paid fire or police department as described in the section of the Worker's Disability Compensation Act which deals with respiratory and heart diseases of firemen and policemen and who receives any pension benefits as a result of employment as a fireman or policeman is not entitled to the presumption that heart diseases or illnesses are work related as provided in that section of the act; the presumption applies only to those who have been denied pension benefits by the employing unit (MCL 418.405; MSA 17.237[405]).

2. STATUTES — JUDICIAL CONSTRUCTION — COURT OF APPEALS.

    *A function of the Court of Appeals is to interpret the Legislature's work product and to do so in such fashion as to effectuate the legislative intent; statutory language need not, and should not, be read with wooden literalness if to do so would create an absurdity or a result contrary to the obvious intent of its authors.*

*Sablich, Ryan, Bobay & Pollok, P.C.* (by *Theodore P. Ryan),* for plaintiff.

*Baxter & Hammond* (by *James R. Piggush),* for defendants.

Before: M. J. KELLY, P.J., and CYNAR and J. C. KINGSLEY,* JJ.

M. J. KELLY, P.J. Plaintiff appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming a hearing referee's denial of plaintiff's claim for benefits. While this Court initially denied leave to appeal, the Supreme Court, in lieu of granting leave, issued an order remanding the case to this Court for consideration as on leave granted. 417 Mich 926 (1983).

Plaintiff's husband, Richard Achtenberg, was employed as a firefighter with the City of East Lansing for 23 years. During his last seven years of service he held the rank of lieutenant. Achtenberg worked a full 24-hour shift on February 27 and 28, 1976, and returned home at 7:30 a.m. on February 28. On the following morning he suffered a fatal heart attack while home in bed.

On May 18, 1976, plaintiff filed a workers' compensation claim on behalf of herself and her three minor children, alleging that the death of her husband was due to his employment as a firefighter. Plaintiff had earlier been notified of her

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

eligibility to receive pension benefits from the Municipal Employees Retirement System (MERS). This system provides for nonduty death benefits and duty death benefits; the latter are preferable. Plaintiff applied for and began receiving nonduty benefits. She was informed that, because duty death benefits would be offset by any workers' compensation benefits for which she might qualify, her application for duty death benefits could not be processed until her workers' compensation claim was completed. Her claim for duty death benefits is still pending.

Denial of workers' compensation benefits below was predicated upon plaintiff's failure to prove that her decedent's death was causally related to his employment. On appeal, plaintiff claims that the WCAB erred in failing to apply the work-related disability presumption contained in MCL 418.405; MSA 17.237(405). That section provides in part:

"Sec. 405. (1) In the case of a member * * * of a full paid fire * * * department of a city * * * employed and compensated upon a full-time basis, * * * 'personal injury' shall be construed to include respiratory and heart diseases or illnesses resulting therefrom which develop or manifest themselves during a period while the member of the department is in the active service of the department and result from the performance of duties for the department.

"(2) Such respiratory and heart diseases or illnesses resulting therefrom are deemed to arise out of and in the course of employment in the absence of evidence to the contrary.

"(3) As a condition precedent to filing an application for benefits, the claimant, if he or she is one of those enumerated in subsection (1), shall first make application for, and do all things necessary to qualify for any pension benefits which he or she, or his or her decedent, may be entitled to. If a final determination is made that

pension benefits shall not be awarded, then the presumption of 'personal injury' as provided in this section shall apply. * * *"

The WCAB refused to apply the § 405(2) presumption because plaintiff had applied for and received pension benefits from her husband's employer. At issue in this appeal is whether the phrase "any pension benefits" as used in § 405(3) was intended to include dissimilar benefits for the same injury, such as the nonduty pension benefits received by plaintiff in this case.

This precise question has recently been decided by another panel of this Court in *Spears v City of Hazel Park,* 131 Mich App 457; 346 NW2d 340 (1984), which was also remanded to this Court from the Supreme Court for consideration as on leave granted. See 417 Mich 940 (1983). The *Spears* panel held that the term "any pension benefits" in § 405 of the Worker's Disability Compensation Act is to be construed together with § 161, which requires city firefighters to elect between workers' compensation benefits and "like benefits" provided under their local charter. MCL 418.161; MSA 17.237(161). The Court in *Spears* then concluded that the Legislature intended "any pension benefits" to include only "like benefits" provided for the same injury. Since plaintiff in *Spears* received nonduty benefits, this Court remanded the case for a new hearing at which the MCL 418.405; MSA 17.237(405) presumption will be applied.

We do not agree with the result reached in *Spears* and believe that the panel in *Spears* read an implication into the Supreme Court's remand orders that we do not. By the Court of Appeals denials of leave in both cases we showed our agreement with the Workers' Compensation Appeal Board's decisions that a claimant who was the

recipient of *any* pension benefits is not entitled to the presumption of work relationship provided in MCL 418.405(2); MSA 17.237(405)(2). In other words, the Legislature meant what it said when it applied the presumption only to those who had been rejected by their employing unit for pension benefits.

Nothing has been presented in this appeal which casts any light upon a legislative intent to make a distinction between duty pension benefits and non-duty pension benefits. We surmise that this distinction was not involved in the lobbying effort or the subcommittee activity which preceded the passage of the legislation under scrutiny.

What is involved here is money. Mrs. Achtenberg was advised by the MERS, which administered her husband's pension benefits, to apply for both nonduty and duty death benefits. Her nonduty death benefits were estimated at approximately $4,000 a year and when added to Social Security benefits her total would rise to about $8,000. If she qualified for duty death benefits the mix from the three sources, pension, Social Security, and workers' compensation would add another $4,500 for a total of around $12,500. Obviously she did what any reasonable person would do, she applied for both and then became caught in the conundrum.

The workers' compensation carrier took the position that she had not been denied pension benefits and therefore was not entitled to the presumption. MERS took the position that its retirement board would not act on her application for duty death benefits until her workers' compensation claim had been finally decided, by which time her children were probably grown and gone. Her husband died in February of 1976, eight years have passed,

and the *Spears* position would now have us in the process of remanding for another round. What is wanted here is a legislative solution.

It seems eminently reasonable to us that the police and firefighters lobby obtained passage of the § 405 presumption because their members were particulary vulnerable to respiratory and heart ailments which were not readily susceptible to etiological diagnosis. See *Schave v Dep't of State Police,* 58 Mich App 178; 227 NW2d 278 (1975), *lv den* 394 Mich 765 (1975). Mr. Achtenberg's fatal heart attack occurred after 23 years in the profession. He had been treating for a heart condition. He had previously suffered a silent heart attack. He was only 19 hours off the job. It seems to us that he comes squarely within the class of persons intended to be benefited by the statute and he ought logically to have been afforded the presumption if he qualified for less than a full measure of pension benefits.

On the other hand, it is also clear that a literal reading of § 405 excludes him from the presumption because he, or rather his widow, qualified for and is receiving some pension benefits. The Legislature ought to address the question of whether the provisions of § 161(1)(a) which deals with the duplication of benefits should be read into § 405, the presumption section.

If this analysis demonstrates that one guess is as good as another, doesn't that *a fortiori* indicate that a legislative solution is mandated?

At this writing there is before the Legislature House Bill No. 4630, a bill to amend § 405 of the act, being MCL 418.405; MSA 17.237(405), but it really does nothing except eliminate the words "in the absence of evidence to the contrary". The present reading is:

"(2) Such respiratory and heart diseases or illnesses resulting therefrom are deemed to arise out of and in the course of employment in the absence of evidence to the contrary."

The proposed amendment reads:

"Such respiratory and heart diseases or illnesses resulting therefrom are presumed to arise out of and in the course of employment."

While the Legislature is considering this section, it should solve the conflict between partial benefit cases versus like benefits cases presently developing in this Court. In the meantime we will read and apply § 405 as the Legislature wrote it.

Affirmed.

J. C. KINGSLEY, J., concurred.

CYNAR, J. *(dissenting)*. The majority holds only that the language of § 405(3) must be read literally; they do not hold that to do so would effectuate the intent of the Legislature as gleaned from § 405 as a whole. I must therefore conclude that my differences with the majority are grounded in our respective concepts concerning the role of the judiciary.

It is our function to interpret the Legislature's work product, and to do so in such fashion as to effectuate the legislative intent. Statutory language need not, indeed should not, be read with wooden literalness if to do so would create an absurdity, or a result contrary to the obvious intent of its authors. I therefore adhere to the reasoning and result in *Spears v Hazel Park,* 131 Mich App 457; 346 NW2d 340 (1984). Accordingly, I would reverse.